565 P.2d 880

Patricia SMITH and Homer Smith, wife and husband, and Bob Smith, Appellants,

v.

Ronald Ray CHAPMAN and Roberta Chapman, husband and wife, Appellees.

No. 2 CA–CIV 2190.

Court of Appeals of Arizona, Division 2.

Dec. 27, 1976.

Rehearing Denied Feb. 8, 1977.

Review Granted March 1, 1977.

Rabinovitz, Minker & Dix, P.C. by Bernard I. Rabinovitz, Tucson, for appellants.

Fish, Briney, Duffield & Miller, P.C. by Arthur H. Miller, Tucson, for appellees.

## OPINION

HOWARD, Chief Judge.

If the evidence shows that the defendant, while under the influence of intoxicants, negligently drove his automobile in such a manner as to be a proximate cause of the collision with the plaintiff's automobile, is the plaintiff entitled to (1) an instruction on punitive damages and (2) an instruction that contributory negligence is not a defense to gross negligence? The resolution of these issues is determinative of this appeal.

On the evening of October 27, 1972, a two-car collision between Patricia Smith and Ronald Ray Chapman occurred in the vicinity of the Cliff Manor Motel on Oracle Road in Tucson, Arizona. As a result of the accident, Mrs. Smith suffered a permanent disability of the right hand which resulted in her being unable to pursue a career as a registered nurse.

Viewing the evidence in the light most favorable to the appellants, as we must, it appears that the Chapman vehicle was proceeding in a northerly direction in the eastern-most lane on Oracle Road. Mrs. Esther Ranger, a night clerk at Cliff Manor, testified that Mrs. Smith's vehicle was in the driveway of the motel at the time of the accident. Mr. Chapman, according to Mrs. Ranger, approached the driveway of the Cliff Manor with his right directional signal on and turned right into the driveway. At that point Mrs. Smith's vehicle began to move forward, as there was no traffic be-

hind the Chapman vehicle. Chapman then changed the direction of his car "as quick as light" and swerved left into appellant while her vehicle was still in the driveway. Mrs. Smith said she never saw the Chapman vehicle and that she was pulling out into the highway prior to being hit.

Officer Wright from the Arizona Highway Patrol, who was called to the scene of the accident, testified that Mr. Chapman was under the influence of intoxicating liquor and failed to satisfactorily perform a series of physical agility tests. His conclusion was verified by a breath analysis which showed that Mr. Chapman was intoxicated at the time of the accident.

Officer Wright was unable to determine the exact point of impact, testifying that it could have occurred in an area covering several lanes of the roadway and possibly part of the driveway.

At trial, appellees sought to impeach the testimony of Mrs. Ranger by showing that she could not have seen all the accident as she claimed.

Did the court err by directing a verdict on the issue of punitive damages?[1] The rules regulating the granting of a directed verdict were carefully delineated by this court in *Cano v. Neill,* 12 Ariz.App. 562, 473 P.2d 487 (1970), wherein we stated:

"There can be nothing discretionary, however, about a directed verdict. A motion for a directed verdict is either grantable, as a matter of law, or it is not. There can be no weighing of the evidence in passing upon the merits of this latter motion. And in passing upon a motion for a directed verdict, the following principles, quoted from *City of Phoenix v. Brown,* 88 Ariz. 60, 64, 352 P.2d 754, 757 (1960), are applicable:

'In *Durham v. Firestone Tire Etc. Co.,* 47 Ariz. 280, 55 P.2d 648, this Court

announced the rule that the trial judge is authorized to direct a verdict in favor of one party *only* where no evidence has been introduced which would justify a reasonable man in returning a verdict in favor of the other party. And not only is the evidence viewed in a light most favorable to the party's case against whom the motion is made, but the truth of whatever evidence he has introduced, together with all reasonable inferences to be drawn therefrom, are taken as admitted.' (Emphasis in original)." 12 Ariz.App. at 570, 473 P.2d at 495.

Appellees contend that the testimony of Mrs. Ranger was incredible. We do not agree. After viewing the record, we believe that her credibility was a jury question. Evidently, the trial court was of the same opinion since it pointed to Mrs. Ranger's testimony in denying appellees' motion for a directed verdict on all issues.

■ The record shows that there was substantial evidence from which a jury could conclude that Mr. Chapman's negligence was a proximate cause of the accident and that he was intoxicated at the time the accident occurred. Did Mr. Chapman's conduct constitute wanton conduct? If it did, the trial court erred when it refused to instruct the jury that contributory negligence is no defense to conduct on the part of the defendant which indicates a reckless disregard of the rights and safety of others, *Townsend v. Whatton,* 21 Ariz. App. 556, 521 P.2d 1014 (1974), and it erred in directing a verdict for punitive damages.[2]

■ We hold that voluntary intoxication on the part of the operator of a motor vehicle involved in an accident proximately caused by his negligent operation of the vehicle constitutes a reckless disregard for

---

1. Procedurally, the issue of punitive damages could have been taken from the jury by refusing to instruct on such damages. However, a directed verdict can be used to eliminate the issue. See, *Brundage v. Wilkins,* 121 Ga.App. 652, 175 S.E.2d 108 (1970). In either case, the trial court's view of the evidence is the same.

2. See the following cases for the type of conduct supporting an award for punitive damages: *Acheson v. Shafter,* 107 Ariz. 576, 490 P.2d 832 (1971); *Campbell Estates, Inc. v. Bates,* 21 Ariz.App. 162, 517 P.2d 515 (1974); *Hiett v. Howard,* 17 Ariz.App. 1, 494 P.2d 1347 (1972).

the safety of others (wanton misconduct) and the court erred in denying the requested instruction and justifies the imposition of punitive damages.[3] The lethal qualities of the automobile are well known. In 1973, 55,800 Americans died from automobile accidents, more than our total combat casualties in the entire Viet Nam War and more than our combat casualties in either the Korean War or World War I.[4] Place a drunk driver behind the wheel of an automobile and you have a time bomb waiting to explode. We cannot view negligent conduct of a drunk driver other than as wanton misconduct.

Punitive damages are not intended to remunerate the injured party for the damages he may have sustained. They are a penalty the law inflicts for wanton misconduct and are allowed as a warning or example to defendant and others. In *Ross v. Clark,* 35 Ariz. 60, 274 P. 639 (1929) the court upheld the allowance of punitive damages in an automobile accident case where there was evidence of negligent driving while intoxicated. The *Ross* case differs factually from the case at bench since it would appear that even without the evidence of intoxication in *Ross,* there was separate evidence of reckless conduct. What we are saying here is that intoxication plus negligent driving equals reckless disregard for the safety and rights of others. We believe that labeling the conduct thusly and allowing punitive damages furthers the strong public policy of this State against driving while intoxicated.[5]

Reversed and remanded for a new trial.

HATHAWAY and HAIRE, JJ., concur.

<hr>

3. See cases annotated in 65 A.L.R.3d 656 at 661–64.

4. "World Almanac & Book of Facts," 1975, Newspaper Enterprises Association, Inc. The *number of deaths from automobile accidents* dropped in 1974 to 46,200. This was due perhaps to the nationwide imposition of the 55 mph speed limit.

5. Under A.R.S. Sec. 28–692.01 there is a mandatory jail sentence of at least one day. If a person is convicted again within 24 months of a previous drunk driving conviction, there is a mandatory jail sentence of at least 60 days and his driver's license is revoked.