## A03A0266. BROOKS v. GRAY.
## A03A0267. FLOWERS v. GRAY.
### (585 SE2d 188)

MILLER, Judge.

In separate lawsuits, Charles Flowers and Corey Brooks sued Peter Gray for injuries they received from an automobile collision in which Gray's vehicle struck their vehicle. The plaintiffs also sought punitive damages on the ground that Gray's driving his vehicle between the hours of 1:00 a.m. and 5:00 a.m. (which former OCGA § 40-5-24 (b) (1) (A) prohibited because of Gray's Class D license) amounted to wilful and wanton conduct and a conscious indifference to consequences. In both cases, the court granted partial summary judgment to Gray. Flowers and Brooks appeal. We discern no error and affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant. Id.

The evidence shows that soon after 1:00 a.m. on February 15, 1999, 16-year-old Gray was driving his friends home from a party when he steered his vehicle off the road's right shoulder. He overcorrected, veering his car into the oncoming lane, where he collided with a vehicle driven by Flowers in which Brooks was a passenger. Both Flowers and Brooks were injured. Gray had a Class D license at the time.

Flowers and Brooks sued Gray separately to recover for their injuries. They also sued for punitive damages, claiming that under former OCGA § 40-5-24 (b) (1) (A), Gray's license did not allow him to drive between the hours of 1:00 a.m. and 5:00 a.m. and that his doing so was wilful and wanton conduct that showed a conscious indifference to consequences. See OCGA § 51-12-5.1 (b). Gray moved for partial summary judgment on the punitive damage counts, which the court in both cases granted. Brooks appeals in Case No. A03A0266, and Flowers appeals in Case No. A03A0267.

1. "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). "Negligence, even gross negligence, is inadequate to support a punitive damage award. . . . [S]omething more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage." (Citations and

punctuation omitted.) *Tower Financial Svcs. v. Smith*, 204 Ga. App. 910, 918 (5) (423 SE2d 257) (1992); see *Gaither v. BarclaysAmerican/Financial &c.*, 194 Ga. App. 188-189 (390 SE2d 97) (1990).

Thus, in automobile collision cases, "punitive damages are not recoverable where the driver at fault simply violated a rule of the road." (Citation and punctuation omitted.) *Miller v. Crumbley*, 249 Ga. App. 403, 405 (3) (548 SE2d 657) (2001), quoting *Carter v. Spells*, 229 Ga. App. 441, 442 (494 SE2d 279) (1997); accord *Fowler v. Smith*, 237 Ga. App. 841, 843 (2) (516 SE2d 845) (1999). To justify punitive damages, we have required that the collision result "from a pattern or policy of dangerous driving, such as driving while intoxicated or speeding excessively." (Citation and punctuation omitted.) *Miller*, supra, 249 Ga. App. at 405 (3); see *Carter*, supra, 229 Ga. App. at 442.

Here plaintiffs do not argue that Gray's veering into oncoming traffic met this standard, nor could they, as we have previously held that crossing the centerline "would not, in the absence of aggravating circumstances, authorize appellants to recover punitive damages." *Currie v. Haney*, 183 Ga. App. 506 (359 SE2d 350) (1987); see *Bradford v. Xerox Corp.*, 216 Ga. App. 83-84 (453 SE2d 98) (1994) (crossing median while speeding on wet pavement not sufficient to support punitive damages). Rather, plaintiffs focus on Gray's Class D license, which at the time did not allow Gray to drive between the hours of 1:00 a.m. and 5:00 a.m. (except under circumstances not applicable here). See Ga. L. 1998, p. 3, § 1 (former OCGA § 40-5-24 (b) (1) (A)). Plaintiffs claim that but for Gray violating this statute, he would not have been driving at the time and the collision would have been avoided. They conclude that "[a]ppellee's actions in driving at a time not allowed by his restricted license amounts to wilful and wanton misconduct or a want of care which would raise the presumption of conscious indifference to the consequences of his actions. . . ."

2. We disagree. Even if operating a vehicle without a proper license affords a basis for actionable negligence, it does not warrant consideration of punitive damages, at least under the present circumstances. See *Brundage v. Wilkins*, 121 Ga. App. 652, 653 (3), (5) (175 SE2d 108) (1970). First, Gray's driving after 1:00 a.m. was not the proximate cause of the accident; rather, it was his crossing the centerline that caused the accident. Second, his action did not constitute "a pattern or policy of dangerous driving, such as driving while intoxicated or speeding excessively." (Citation and punctuation omitted.) *Miller*, supra, 249 Ga. App. at 405 (3). There is nothing inherently dangerous about teenagers or inexperienced drivers driving during the early hours of the morning. Indeed, the legislature statutorily authorized such drivers to drive during these hours if doing so for employment, school, religious organization, or emergency rea-

sons. See Ga. L. 1998, p. 3, § 1 (former OCGA § 40-5-24 (b) (1) (A)). Driving while intoxicated (*Moore v. Thompson*, 255 Ga. 236, 237-238 (336 SE2d 749) (1985)), choosing to stop an unlit tractor-trailer for 35 minutes in the center lane of an interstate highway without warning devices at night (*Fowler*, supra, 237 Ga. App. at 843-844 (2)), or driving a tractor-trailer with serious mechanical problems that caused it for 20 miles prior to the collision to weave erratically from lane to lane (*J. B. Hunt Transport v. Bentley*, 207 Ga. App. 250, 255 (2) (427 SE2d 499) (1992)), are inherently dangerous activities, but simply driving at a forbidden time of the day or night is not, particularly when the purpose for that driving may exempt one from the prohibition. Driving at a forbidden time may be a violation of the rules of the road, but it is not wilful and wanton misconduct that shows conscious indifference to consequences. Cf. *Saucedo v. The Salvation Army*, 200 Ariz. 179, 182 (24 P3d 1274) (Ct. App. 2001) (driving with a suspended license did not warrant punitive damages).

The trial court did not err in granting partial summary judgment to Gray on the claims for punitive damages.

*Judgment affirmed. Andrews, P. J., concurs. Johnson, P. J., Ruffin, P. J., and Adams, J., concur and concur specially. Smith, C. J., and Barnes, J., dissent.*

RUFFIN, Presiding Judge, concurring and concurring specially.

I agree with both the reasoning employed and the result reached by the majority. I write separately merely to clarify my position. If, in addition to relying on the technical violation of OCGA § 40-5-24, Brooks and Flowers had pointed to evidence showing that Gray had been either speeding or driving recklessly, I believe a jury issue would exist.[1] Here, however, Brooks and Flowers rely solely on the violation of OCGA § 40-5-24 in support of their claims for punitive damages. In other words, Brooks and Flowers seek to recover punitive damages simply because Gray violated an administrative rule rather than committed an act of negligence which evidenced "a pattern or policy of dangerous driving."[2] Thus, I concur.

I am authorized to state that Presiding Judge Johnson and Judge Adams join in this special concurrence.

ADAMS, Judge, concurring and concurring specially.

I concur in the reasoning and result reached in the majority opinion and in Presiding Judge Ruffin's concurring opinion. I write

[1] See *Carter v. Spells*, 229 Ga. App. 441, 445 (494 SE2d 279) (1997) (McMurray, P. J., dissenting); *Bradford v. Xerox Corp.*, 216 Ga. App. 83, 84-85 (453 SE2d 98) (1995) (Johnson, J., dissenting).

[2] (Punctuation omitted.) *Miller v. Crumbley*, 249 Ga. App. 403, 405 (3) (548 SE2d 657) (2001).

separately only to note that by amending the Teen-age and Adult Driver Responsibility Act in 2001 (Ga. L. 2001, p. 184) to strengthen the original Act (Ga. L. 1997, p. 760), the legislature rightfully acted in response to serious concerns raised by a string of tragic accidents involving dozens of teenage drivers in this state. See Everett, Motor Vehicles and Traffic, 18 Ga. St. U. L. Rev. 205, 206 (2001). The law is clearly designed to protect this state's young drivers as well as those who share the road with them. In this case, there is no question that Gray was violating the curfew provision of the law at the time of the accident. Nevertheless, without any facts suggesting a pattern or policy of dangerous driving, the trial court correctly granted partial summary judgment on the issue of punitive damages.

SMITH, Chief Judge, dissenting.

I respectfully dissent. Under OCGA § 51-12-5.1 (b), punitive damages can be awarded if clear and convincing evidence shows that a defendant's actions amounted to "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Ordinarily, whether a defendant's actions were wilful or wanton so as to authorize a punitive damage award is a jury issue. *Christopher Investment Properties v. Cox*, 219 Ga. App. 440, 444 (465 SE2d 680) (1995). And on summary judgment, the trial court cannot resolve facts or reconcile the issues; instead, the court can only determine if a factual issue exists, and the party opposing the motion for summary judgment must "be given the benefit of all reasonable doubt and all favorable inferences that may be drawn from the evidence. [Cit.]" *Fowler v. Smith*, 237 Ga. App. 841, 844 (516 SE2d 845) (1999).

Upon construing the evidence under the longstanding summary judgment standard and under the rule that only a jury can usually determine whether to award or deny punitive damages, I cannot agree that summary judgment on this issue was correctly granted.

Gray was driving at a time strictly and clearly prohibited by his Class D license under the former version of OCGA § 40-5-24 (b) (1) (A). And nothing in the record suggests that he was exempted from the prohibition of driving between 1:00 a.m. and 5:00 a.m. by virtue of former OCGA § 40-5-24 (b) (1) (A) (i)-(iv), which allowed drivers having a Class D license to drive during these hours for the limited purposes of employment, school or religious activities, and emergencies. On the contrary, Gray was driving home from a party. He drove in utter disregard of the unambiguous language set out by the legislature in OCGA § 40-5-24. And Gray did not simply violate a "rule of

the road." Instead, as argued by the appellants in this case, he should not have been driving, period.[3]

I note that after the collision in this case, OCGA § 40-5-24 was amended to extend the hours during which Class D license holders are prohibited to drive and to omit the exceptions contained in the former statute. See Ga. L. 2001, pp. 184, 185-186, § 1-2. Under the new legislation, such drivers cannot drive *at all* between the hours of 12:00 midnight and 6:00 a.m. OCGA § 40-5-24 (b) (2) (A). While this statute's purpose is not expressly recited in the statute itself, one such purpose is obvious: to protect the public in general in addition to protecting young, inexperienced drivers by curtailing such drivers' ability to drive at a time of night when their already limited ability and judgment are surely compromised. Gray drove in complete disregard of this statute of which he presumably had knowledge, and but for his presence on the road, where he had no right to be in the first place, the collision in this case would not have occurred.

> [W]here the facts and circumstances of the tort show an entire want of care, such conduct gives rise to a presumption of indifference to the consequences, i.e., wantonness, which is sufficient to support an award of punitive damages. The peculiar facts and circumstances of a particular case, when supported by clear and convincing evidence of culpability, may cause ordinary negligence to give rise to the presumption that the conduct showed a conscious indifference to the consequences and an entire want of care.

(Citations omitted.) *Langlois v. Wolford*, 246 Ga. App. 209, 210 (1) (539 SE2d 565) (2000). In my view, the collision in this case was the very type of incident our licensing statute was designed to prevent, and at the very least, a jury issue exists as to whether Gray's actions amounted to "a conscious indifference to the consequences" of his actions and an "entire want of care" authorizing an award of punitive damages. I must therefore dissent from the majority opinion.

I am authorized to state that Judge Barnes joins in this dissent.

DECIDED JULY 9, 2003.

*Jennings, Sparwath & Satcher, Daniel M. Jennings, Stephen H. Sparwath*, for appellants.

---

[3] Indeed, the "Uniform Rules of the Road" are found at OCGA §§ 40-6-1 through 40-6-397, a distinct chapter from that devoted to the law concerning driver's licenses. See OCGA §§ 40-5-1 through 40-5-179.

*Harper, Waldon & Craig, Russell D. Waldon, Trevor G. Hiestand,* for appellee.